**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. <u>24-CR-20308-DAMIAN(s)</u>**

**UNITED STATES OF AMERICA**

**v.**

**RAFAEL ANTONIO SALDANA,**

    **Defendant.**

_____/

## <u>THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM</u>

A federal jury found the Defendant guilty of three counts of attempted coercion and enticement of a minor to engage in sexual activity; one count of attempted production of visual depictions involving the sexual exploitation of minors; receipt of visual depictions involving the sexual exploitation of minors; and possession of visual depictions of minors engaged in sexually explicit conduct. PSI ¶ 1. The evidence at trial demonstrated the Defendant manipulated and enticed at least three minor victims in the months leading up to his arrest. The evidence also showed that this Defendant first enticed a minor over a decade prior to the conduct underlying his conviction. The Defendant's conduct should leave the Court with no doubts about his lack of respect for the law. As such, the Court should sentence the Defendant within the advisory guidelines range calculated by Probation, to a sentence of life imprisonment. PSI ¶ 115.

## <u>THE STATUTORY FACTORS</u>

The facts of this case and the Defendant's conduct warrant a guidelines sentence. The Defendant's unyielding desire to engage in sex with minors makes clear that he poses a grave danger to society. His sexual interest in children, taken with his willingness to act on that interest,

necessitates a guidelines sentence. A guidelines sentence is necessary here due to the seriousness of the offense, the history and characteristics of the Defendant, the need to deter criminal activity, the need to promote respect for the law, and the importance of protecting the public. 18 U.S.C. § 3553(a).

A. **The Nature and Circumstances of the Offense**

The nature and circumstances of the Defendant's offense conduct are deeply troubling. The Defendant – an employee of the Early Childhood Initiative Foundation in Miami – pursued his interest in the sexual abuse of children for years. As demonstrated by the evidence presented at trial, the Defendant solicited sexual images from three susceptible teenage boys and tried to meet to engage in sexual activity. Further, the Defendant's description of his intent is appalling. The Defendant told Minor Victim 1, a 14-year-old boy at the time, that he would show him "how to take care of us. Sit [Minor Victim 1] on the couch between us so one of us can play with your body while you suck the other one." PSI ¶ 19. In the same conversation, the Defendant explicitly made plans to pick Minor Victim 1 up from a McDonald's to take him back to his home and act on those depraved intentions.

The Defendant told Minor Victim 2 that he would "tie [Minor Victim 2] up and film while we have our way with you and share with all [his] perv daddy friends." PSI ¶ 23. He went on to say he would "start by fucking [Minor Victim 2] from both ends." Minor Victim 3 also testified at trial that the Defendant tried to make plans to meet in person to engage in sexual activity.

Law enforcement testified at trial that only a partial extraction could be acquired from the Defendant's phone. As a result of the swift and determined action taken by Minor Victim 1's mother to protect her child against the Defendant, the Defendant was met at that McDonald's by

law enforcement rather than the child he hoped to meet. Still, the Defendant harmed these three minor victims by soliciting sexually explicit images from each one of them. Each child testified that they told the Defendant they were not eighteen years old.

The Defendant victimized others as well. In total, the Defendant possessed eighty-three (83) images and six (6) video files depicting the sexual exploitation of minors. Many such images were not of Minor Victim 1, Minor Victim 2, or Minor Victim 3. Rather, the Defendant victimized other children, as young as infants, toddlers, and prepubescent minors by possessing images of heinous sexual abuse experienced by these individuals. PSI ¶ 24. Law enforcement testified at trial that the Defendant had communicated previously with his then-boyfriend, D.C., about meeting to engage in sex while D.C. was a minor. The Defendant's conduct most certainly warrants a sentence within the advisory guidelines range.

Moreover, the Eleventh Circuit has upheld sentences in accord with the guidelines range as calculated in this case. Indeed, the Eleventh Circuit has even affirmed life and natural-life sentences for conduct similar to the Defendant's. For example, in *United States v. Manley*, the Eleventh Circuit rejected a reasonableness challenge and affirmed a 360-month sentence for a 64-year-old defendant who took to the internet to engage an undercover agent offering up her putative twelve-year-old daughter for sex. 231 F. App'x 870, 871 (11th Cir. 2007). In *United States v. Rothenberg*, the Eleventh Circuit upheld a 300-month sentence for a 64-year-old defendant who engaged for sex an undercover agent posing as the father of an eleven-year-old daughter. 610 F.3d 621, 627 (11th Cir. 2010). The Eleventh Circuit has also rejected Sixth and Eighth Amendment challenges and affirmed a life sentence where the defendant possessed child pornography and

attempted to entice a putative seven-year-old girl. *United States v. Worsham*, 479 F. App'x. 200, 206 (11th Cir. 2012).

In fact, in most cases, the Eleventh Circuit has "treated sex offenses as serious crimes, upholding severe sentences…" *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008). And although some attempted-child-enticement cases result in guideline ranges that near a statutory minimum, many others—as here—involve aggravating factors resulting in enhanced sentences. Examples of sentences far exceeding the statutory-minimum sentence for attempted violations of section 2422(b) abound. *See, e.g., United States v. Syed*, 616 F. App'x 973, 983 (11th Cir. 2015) (affirming 294-month sentence for attempted enticement of a fictional 14-year old); *United States v. Anderson*, 509 F. App'x 868, 871–878 (11th Cir. 2013) (affirming a 324-month sentence where the defendant had communicated with an undercover agent about having sex with an 11- year-old and 14-year-old); *Worsham*, 479 F. App'x at 206 (affirming life sentence for repeat sex offender convicted after trying to arrange sexual encounter with bad mother's fictional child); *United States v. McGee*, 379 F. App'x 875, 878 (11th Cir. 2010) (rejecting challenge to attempted enticement sentence on grounds the minor was fictional and affirming the 235-month sentence); *United States v. Friedlander*, 395 F. App'x 577, 582 (11th Cir. 2010) (affirming a 360-month sentence for attempted enticement of two children for sex through communication with an undercover agent); *United States v. Farley*, 607 F.3d 1294, 1345 (11th Cir. 2010) (affirming a 235- month sentence on attempted enticement count where businessman contacted undercover agent posing as bad mother of 11-year-old daughter in a sex-fetish forum and arranged a rendezvous in Atlanta).

Although this Court must consider other factors beyond the Defendant's offense conduct, this Court should nonetheless weigh his offense conduct heavily. *See, e.g., United States v.*

*Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court."). "Long-term studies show that sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 544 U.S. 407, 468 (2008) (Alito, J., dissenting) (quotation marks omitted).

**B. <u>History and Characteristics of the Defendant</u>**

The Defendant's history and characteristics also weigh strongly in favor of a guidelines sentence. The United States agrees with the United States Probation Office that the Defendant's history and characteristics do not warrant a downward departure or downward variance. *See* PSR ¶ 128. Nothing in the Defendant's background supports a downward variance. The Defendant had a successful career, earning a place in the Miami Foundation's Miami Fellows leadership development program. (DE:161). The Defendant holds an associate's degree from Miami-Dade College and a bachelor's degree from Colombia University. PSI ¶ 97. The Defendant's lack of criminal history and bond violations do not support a sentence outside of the guidelines range. The guidelines specifically account for an individual's lack of criminal history and bond violations through the calculation of a criminal history category. The Defendant's guidelines range would increase accordingly in consideration of any criminal history. The guidelines as calculated adequately encompass this aspect of the Defendant's history. The Defendant's history and characteristics demonstrate that he is precisely the type of individual who understands the severity of the conduct he engaged in and, perhaps more importantly, that attempting to engage in sex with children is morally and legally reprehensible.

**C. <u>Need to Protect the Public, Seriousness of the Crime, Promoting Respect for the Law, and the Need for Just Punishment</u>**

Incapacitation of child sex offenders is a valid penological goal. *See United States v. Koontz*, 767 F. App'x 1, 4 (D.C. Cir. 2019). As the Eleventh Circuit explained in *United States v. Irey*: "the greater the harm the more serious the crime, and the longer the sentence should be for the punishment to fit the crime." 612 F.3d 1160, 1206 (11th Cir. 2010), *cert. denied*, 131 S. Ct. 1813 (2011). Punishment is the way in which society expresses denunciation of wrongdoing, and it is thus essential that this Court promote and maintain respect for the law by pronouncing sentences that fully reflect society's determination that the sexual abuse of children is reprehensible. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). On August 28, 2024, this Court sentenced a defendant to 360 months' imprisonment after the defendant installed devices in passenger cabins that captured children in various states of undress. Case No. 24-CR-60046-Damian at DE:36. This sentence followed the defendant's acceptance of responsibility.

Here, the Defendant victimized at least three children by soliciting sexually explicit images from them and took clear and decisive steps to meet with multiple young teenage boys for the purposes of having sex. The seriousness of the crime, taken with the need for just punishment and the overwhelming danger that the Defendant poses to children in the community, weigh heavily in favor of a guidelines sentence.

6

### D. **Adequate Deterrence and Need to Protect the Public**

The Defendant's persistence, caution, and intelligence make plain that he will remain a danger to children in our society well into the future. In fact, studies show that recidivism rates for sex offenders increase over time. *See* Adult Sex Offender Recidivism by Roger Pryzybylski[1] ("Sex offenders in the Sample and Bray study had one-year, three-year and five-year rearrest rates for any new offense of 21.3 percent, 37.4 percent and 45.1 percent, respectively."); *see also* Recidivism: How Often Do Child Molesters Go On To Reoffend[2] ("Overall, follow-up studies typically find sexual recidivism rates of 10%-15% after five years, 20% after 10 years, and 30%-40% after 20 years") (internal citation omitted). Notably, recidivism statistics underrepresent the true volume of reoffenders because sex offenses are grossly underreported and only a subset of sex offenses result in an arrest. *See* Adult Sex Offender Recidivism by Roger Pryzybylski ("For example, Bachman (1998) found that only about one in four rapes or sexual assaults were reported to police. More recently, Tjaden and Thoennes (2006) found that only 19 percent of women and 13 percent of men who were raped since their 18th birthday reported the rape to the police."). Deterrence is therefore particularly important for cases involving a sexual interest in children. *See United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (discussing sentencing principles in child pornography case).

"Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *Id*. The Supreme Court has noted "grave concerns

---

[1] Available at https://smart.ojp.gov/somapi/chapter-5-adult-sex-offender-recidivism (last visited February 21, 2023).
[2] Available at http://www.leadershipcouncil.org/1/res/rcd.html#:~:text=What%20is%20the%20truth%3F,not%20all%20offences%20are%20detected (last visited February 21, 2023).

over the high rate of recidivism among convicted sex offenders and their dangerousness as a class.
. .” *Smith v. Doe*, 538 U.S. 84, 103 (2003). The Defendant fits well within that class. As this Circuit
recognized in *Irey*, research in this field is “consistent with what judicial decisions show:
pedophiles who have sexually abused children are a threat to continue doing so, and age does not
remove the threat.” 612 F.3d at 1214 (citing various studies and reports); *see also Pugh*, 515 F.3d
at 1201 (“sex offenders have appalling rates of recidivism and their crimes are under-reported.”);
*United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) (“Congress explicitly recognized
the high rate of recidivism in convicted sex offenders, especially child sex offenders.”). This is
particularly true in the internet age, where social media platforms, dark web exchanges, and
anonymizing software have all made it much easier for any interested individual to exploit and
entice underage minors—as the evidence in this very case clearly demonstrated.

This Defendant in particular has demonstrated the need for deterrence in his conduct
following his conviction. In a letter to Minor Victim 1, still a teenager today, the Defendant
attempted to downplay his egregious conduct, writing, “The government is asking for life in prison
over talking online. . . . Is what I did with you worthy of a minimum of 15 years in prison, or much
much longer like the government is asking for?” He went on to tell the teenager, “Don’t ghost me.”
(DE:148 Ex. B). The Defendant reached out to Minor Victim 2 imploring the same. (DE:148 Ex.
A). The Defendant’s complete inability to accept responsibility even after the jury’s verdict, even
after watching three young boys testify in Court about their victimization, leaves no question as to
the strong need that exists to protect children in the community from the Defendant— now and
well into the future.

## **CONCLUSION**

A sentence below the advisory guidelines range would fail to serve the purposes enumerated in Title 18, United States Code, Section 3553(a). The Defendant should be sentenced within the advisory guidelines.

Respectfully submitted,
HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: February 5, 2025          By:     */s/ Audrey Pence Tomanelli*
Assistant United States Attorney
Court ID No.: A5503001
99 NE 4th Street, 6th Floor
Miami, Florida 33132
Tel: (305) 961-9031
Email: Audrey.Pence.Tomanelli@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on February 5, 2025, the undersigned electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.

<u>*/s/ Audrey Pence Tomanelli*</u>
Audrey Pence Tomanelli
Assistant United States Attorney